## 23-1945

# United States Court of Appeals
### *for the*
## Fourth Circuit

In re:  ESTATE OF LARRY W. COOK, Deceased

-------------------------------------------------------------------

JANINE SATTERFIELD, in her capacity as Administrator for the
Estate of Larry W. Cook, Deceased,

*Plaintiff/Appellant,*

− v. −

WELLS FARGO BANK, N.A.; NAVY FEDERAL CREDIT UNION,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# OPENING BRIEF OF APPELLANT

L. Steven Emmert
SYKES, BOURDON,
   AHERN & LEVY, PC
4429 Bonney Road, Suite 500
Virginia Beach, Virginia 23462
(757) 965-5021

Kimberley A. Murphy
Lisa M. Campo
Justin B. Berger
HALE BALL MURPHY, PLC
10511 Judicial Drive
Fairfax, Virginia 22030
(703) 591-4900

*Counsel for Appellant*
*Janine Satterfield*

*Counsel for Appellant*
*Janine Satterfield*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1945__          Caption: __Janine Satterfield, etc. v. Wells Fargo & Co., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Janine Satterfield__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                          ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                       ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?         ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Kimberley Ann Murphy, Esq.                    Date:    September 12, 2023

Counsel for: Appellant Janine Satterfield

Print to PDF for Filing

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTION ............................................................................... 1

ISSUES PRESENTED ....................................................................... 1

STATEMENT OF THE CASE ............................................................. 2

    Facts ............................................................................................ 2

    Procedural posture .................................................................... 5

SUMMARY OF ARGUMENT ............................................................. 6

ARGUMENT ..................................................................................... 7

    Standard of Review.................................................................... 7

        1.    THE VIRGINIA UNIFORM COMMERCIAL CODE DOES NOT PREEMPT COMMON LAW CLAIMS IN SITUATIONS LIKE LARRY'S .................................................................................... 8

            A.    The complaint contained allegations sufficient to state a claim ...................................................................... 8

            B.    The common-law claims here fall outside UCC Article 4A .......................................................................... 9

                1.    Article 4A does not displace common-law tort........... 10

                2.    Banks owe a duty of care to their customers, and when they breach that duty, the remedies are not exclusively within Article 4A ............................. 12

                3.    The Bank Secrecy Act imposes duties upon banks that are outside the requirements of Article 4A............................................................... 13

        II.    THE DISTRICT COURT SHOULD HAVE GRANTED THE MOTION TO ALTER OR AMEND ................................................. 16

III.    VIRGINIA LAW DOES NOT REQUIRE A JUDICIAL
        INCAPACITY FINDING BEFORE A BANK IS ON NOTICE OF
        FINANCIAL EXPLOITATION ................................................................18

        A.    NFCU acted under § 63.2-1606 .......................................19

        B.    The pleadings state triable claims for undue
              influence and financial exploitation ...............................22

IV.     THE DISTRICT COURT SHOULD HAVE (1) ORDERED
        PRODUCTION OF THE INTERMEDIARY AGREEMENT
        BETWEEN NFCU AND WELLS FARGO, AND THE
        CUSTOMER SERVICE AGREEMENTS, AND (2) ALLOWED
        THE ADMINISTRATOR TO AMEND HER COMPLAINT TO
        INCLUDE THEM ................................................................................23

CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases:

*AG4 Holding, LLC v. Regency Title & Escrow Servs.*,
  98 Va. Cir. 89 (Fairfax Cir. 2018) ................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 8, 9

*Bala v. Va. Dep't of Conserv. & Rec.*,
  532 F. App'x 332 (4th Cir. 2013) ..................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................... 16

*Blue Flame Med. LLC v. Chain Bridge Bank, N.A.*,
  21-2218, 21-2219, 2023 U.S. App. LEXIS6547
  (4th Cir. Mar. 20, 2023), cert. denied 2023 U.S. LEXIS 3152
  (U.S., Oct.2, 2023) ...................................................................................... 15, 16

*Consorcio Indus. De Construccion Titanes, S.A. DE C.V. v.
  Wells Fargo Bank, N.A.*,
  No. 3:10-CV-2111-K, 2012 U.S. Dist. LEXIS 200382
  (N.D. Tex. July 12, 2012) ................................................................................. 12

*Doe v. Deutche Bank Aktiengesellsschaft*,
  No. 22-cv-10018 (JSR), 2023 U.S. Dist. LEXIS 75503
  (S.D.N.Y. May 1, 2023) ............................................................................... 12, 13

*Eisenberg v. Wachovia Bank, N.A.*,
  301 F.3d 220 (4th Cir. 2002) ...................................................................... 15, 16

*Gill v. Gill*,
  219 Va. 1101, 254 S.E.2d 122 (1979) .............................................................. 22

*Johnson v. Oroweat Foods Co.*,
  785 F.2d 503 (4th Cir. 1986) ........................................................................... 24

*Kotte v. Truist Fin. Corp.*,
  2022 Ga. Super. LEXIS 3423 (March 30, 2022) ............................................. 11

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006) ............................................................................. 7

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009) .............................................................................. 17

*N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*,
    690 F.2d 339 (3d Cir. 1982) ............................................................................... 10

*Nuckols v. Nuckols*,
    228 Va. 25, 320 S.E.2d 734 (1984) ................................................................... 22

*Pace v. Richmond*,
    231 Va. 216, 343 S.E.2d 59 (1986) ................................................................... 22

*Pedersen v. MidFirst Bank*,
    527 F. Supp. 3d 188 (N.D.N.Y. 2021) .............................................................. 11

*Quillin v. C.B. Fleet Holding Co.*,
    328 F. App'x 195 (4th Cir. 2009)....................................................................... 18

*Robinson v. Am. Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) ................................................................................ 7

*Schlegel v. Bank of Am., N.A.*,
    271 Va. 542, 628 S.E.2d 362 (2006) ................................................................. 11

*Spaulding v. Wells Fargo Bank, N.A.*,
    714 F.3d 769 (4th Cir. 2013) ................................................................................ 2

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ........................................................................................... 17

*Trulock v. Freeh*,
    275 F.3d 391 (4th Cir. 2001) ................................................................................ 9

*Valente v. TD Bank, N.A.*,
    92 Mass. App. Ct. 141, 82 N.E.3d 1082 (Mass. Ct. App. 2017) ..................... 12

*Venture Gen. Agency, L.L.C.*,
    2019 U.S. Dist. LEXIS 129032 (N.D. Cal. Aug. 1, 2019)................................ 11

*Vitol, S.A. v. Primerose Shipping Co.*,
    708 F.3d 527 (4th Cir. 2013) ................................................................................ 8

iv

**Statutes & Other Authorities:**

12 U.S.C. §632 ................................................................................................. 1

28 U.S.C. §1291 ............................................................................................... 1

28 U.S.C. §1331 ............................................................................................... 1

31 U.S.C. §5311 ............................................................................................. 13

Fed. R. Civ. P. 8(a)(2) ................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................... 2, 5, 8, 16

Fed. R. Civ. P. 15(a)(2) ............................................................................... 24

Fed. R. Civ. P. 59 ................................................................................... 1, 18

Fed. R. Civ. P. 60 ........................................................................................... 1

Restatement (Third) of Torts: Phys. & Emot. Harm § 19 ...................... 13

U.C.C. §4A-211(f) ......................................................................................... 15

Va. Code §8.4A-102 .................................................................................. 9, 10

Va. Code §8.4A-211 ...................................................................................... 19

Va. Code §8.4A-212 ...................................................................................... 24

Va. Code §63.2-1603 ..................................................................................... 19

Va. Code §63.2-1606 ........................................................................... 15, 19, 22

Va. Code §63.2-1606(C) ............................................................................... 21

Va. Code §63.2-1606(L) ......................................................................... 10, 20

Va. Code §64.2-2000 ............................................................................... 18, 20

**JURISDICTION**

This appeal arises from litigation filed by a decedent's Administrator against two financial institutions. Because the litigation involved banking, the district court had jurisdiction under 12 U.S.C. §632 and 28 U.S.C. §1331.

This Court has jurisdiction over this appeal under 28 U.S.C. §1291 because the district court entered a final decision in the litigation below. That decision resolved all claims asserted in the action. The district court entered an order dismissing the action on May 15, 2023. The plaintiff timely filed a motion seeking relief under Fed. R. Civ. P. 59 and 60. The court denied that motion by order entered August 9, 2023. The plaintiff noted an appeal to this Court on September 8, 2023.

**ISSUES PRESENTED**

1. Whether the Virginia Uniform Commercial Code pre-empts common law claims in situations in which the behavior prior to processing the wires is at issue, and the banks were on notice that the customer was being scammed and susceptible to financial exploitation.

2. Whether the district court should have reopened the case to allow introduction of germane and admissible after-acquired evidence that first surfaced in response to media coverage of this case, and to allow consideration of new legal authority – including a decision from this Court – released after the case was initially dismissed.

3. Whether Virginia law requires a finding of incapacity by a court before a bank is considered "on notice" of financial exploitation, particularly in situations involving undue influence, which is a species of fraud.

4. Whether the district court erred in dismissing the case instead of allowing it to proceed forward for a factual determination of whether the banks had reason to believe Decedent was incapacitated, when it was a bank that made the report to Adult Protective Services.

5. Whether the district court should have allowed further amendment of the Complaint and order the release of the documentary evidence that the banks had sealed, to determine whether they bore upon the Administrator's claims.

## STATEMENT OF THE CASE

Facts

Because the district court granted a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the facts below are taken from the amended complaint. This Court views the facts in the light most favorable to the Administrator. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013).

Larry W. Cook ("Larry") was a highly decorated United States Navy veteran. He retired from military service as a Commander in 1992, after a 34-year career. JA 213 ¶¶ 13(a) and (d). He was a nuclear submarine officer, having received numerous service awards. JA 213 ¶¶ 13(d)-(e). He had a thriving post-retirement career as a civilian government contractor. JA 214 ¶ 13(f). He was highly intelligent and capably managed his own affairs before his health declined. JA 214 ¶ 14.

2

Larry never married and had no children; his one sibling and his mother predeceased him. JA 215 ¶¶ 24-25. Before 2019, he was a meticulous record keeper who managed both his affairs and his mother's. JA 214 ¶¶ 14, 18, 19; JA 215 ¶ 27. That all changed on July 15, 2019 when, at age 74, he suffered an acute stroke. JA 215 ¶ 28.

Larry awoke at home with impaired coordination and failed to seek help for over 14 hours before going to a hospital. Prompt care would have given him a chance to minimize his neurologic deficits. JA 215 ¶ 29. He was discharged to inpatient rehabilitation with poor insight into his condition and little insight into his deficits; he was instead concerned about going back to work and being cleared to drive. JA 215 ¶ 31. In addition to several physical disabilities, the stroke left him with cognitive impairment including emotional instability, impulsiveness, impaired judgment, and impaired insight with denial. All of this made him highly vulnerable to undue influence and financial exploitation, and impaired his capacity to make rational decisions about his health and the management of his finances. JA 215-216 ¶ 32.

Larry was in poor health after the stroke, suffering myocardial infarction, Type II diabetes, hypertension, hyperlipidemia, gout, and obesity. JA 216 ¶ 41. He was the acting successor trustee of the Esther J. Murphy Trust, but after his stroke he did nothing to administer it and became unresponsive

3

to the beneficiaries and others. JA 216 ¶ 34. By June 2020, he was no longer
capable of working as a contractor, and had to retire. JA 216 ¶ 35.

Larry's social isolation probably exacerbated his vulnerability to undue
influence and financial exploitation. JA 216 ¶ 36. The stroke produced
cognitive deficits unlikely to significantly improve over time, and left him
highly vulnerable to undue influence and financial exploitation. JA 216 ¶ 37.
He stopped filing personal income tax returns for himself, for his mother, and
for the Murphy Trust – a deviation from his prior conduct. JA 216 ¶ 38.

On October 5, 2020, Larry received an unsolicited email indicating that
it came from the company "Amazon". JA 216-217 ¶ 42; JA 321-325. Over the
next two months, he began falling for an elaborate and fraudulent scam. This
was the very scam that appellee Navy Federal Credit Union, where Larry
maintained a large account, flagged to its depositors in a customer alert. JA
217 ¶ 43; JA 326-327.

The next day, October 6, Larry sent out a wire from his NFCU checking
account. JA 217 ¶ 45. That same day, he contacted NFCU to check his account
balance and stated, "We're moving money around due to an infraudulent [sic]
charge on another system, and I need to validate what the current balance is."
JA 217 ¶ 46. No one at NFCU noticed the variation in his language. On
November 10, five days after Wells Fargo Bank denied a wire request, Larry

4

was able to successfully send the same wire, and 61 more, through NFCU. JA 219 ¶ 57; JA 328-486.

On December 15, after 28 more wires went out, a representative of NFCU finally reported Larry to Fairfax County Adult Protective Services. JA 219 ¶ 58; JA 494-507. At no time did NFCU stop wiring money out; it instead continued sending documents to continue wire transfers. JA 220 ¶¶ 66 and 67. In all, $3,631,200 vanished from Larry's account, sent to individuals maintaining accounts with a bank in Thailand.

Larry died in April 2021. Appellant Janine Satterfield qualified as the Administrator of his Estate on June 14, 2021. JA 211 at ¶ 1; JA 212.


Procedural posture

The Administrator sued Navy Federal Credit Union and Wells Fargo Bank, N.A. in a Virginia state court. NFCU removed the case to the U.S. District Court for the Eastern District of Virginia.

The Administrator obtained leave in the district court to file an amended complaint. NFCU and Wells Fargo each moved to dismiss that pleading under Fed.R.Civ.P. 12(b)(6). The court entered a pretrial scheduling order, but suspended discovery eight days later. After a hearing on the

5

motions to dismiss, and over the Administrator's opposition, the court entered a second order staying discovery again, pending a ruling on the motions.

The court eventually granted the motions to dismiss. The Administrator timely moved to alter or amend the judgment, citing among other things a new decision from this Court that postdated oral argument below. The motion included an affidavit from a new witness, Sean Gray. The defendants' responses to the motion included a request to strike the affidavit.

The district court, without oral argument, denied the motion to alter or amend and entered final judgment on August 9, 2023, without ruling on the motion to strike the affidavit. The Administrator appeals.

## SUMMARY OF ARGUMENT

This appeal presents the tragic tale of a highly decorated retired military officer who, suffering cognitive impairment following a stroke, fell victim to a well-organized financial scam. It is also the tale of the banks who allowed that scam to continue, well after they were on notice of it.

In this case, the district court erroneously ruled that provisions of the Uniform Commercial Code preempted banks' common-law duties to their depositors. It applied the wrong Virginia statute to incorrectly require a

6

court's adjudication of incapacity before the banks' duties arose. But Virginia law requires no such advance court hearing.

The depositor lost over $3.6 million before the scam ended with his death. The Administrator of his estate was entitled to a jury trial on the string of frauds, but the district court prematurely and erroneously ended the case. In doing so, it refused to apply new authority from this Court and turned aside germane new evidence that surfaced only in response to media coverage of this case.

## ARGUMENT

### Standard of Review

This Court reviews de novo the dismissal of an action for failure to state a claim. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). This governs the Court's review of parts I-III below. Part IV addresses the district court's refusal to order production of documents and refusal to allow leave to amend; this Court reviews those issues for abuse of discretion. *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006).

1.     **THE VIRGINIA UNIFORM COMMERCIAL CODE DOES NOT PREEMPT COMMON LAW CLAIMS IN SITUATIONS LIKE LARRY'S**.

This is a case where damages could have been mitigated – the significant monetary hemorrhage could have been, and by all indications, should have been stanched. But the appellees failed Larry. Despite suspecting that he was a vulnerable individual who was the victim of an ongoing financial crime, and despite reporting his activity to Adult Protective Services, *and* despite being told he was an adult in need of services, they failed to take any steps to protect their depositor from further economic harm. The fraud against him only came to an end with his death.

A. The complaint contained allegations sufficient to state a claim.

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed.R.Civ.P. 8(a)(2). When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Gauging plausibility is "a context-specific task that requires the reviewing court to draw on its judicial

8

experience and common sense." *Id.,* 679. A complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).

      B. <u>The common-law claims here fall outside UCC Article 4A</u>.

      The conduct alleged against NFCU and Wells Fargo is not confined to U.C.C. Article 4A, as codified in Virginia, because the allegations relate to NFCU's conduct *before* making the 74 wire transfers and Wells Fargo's conduct *before* its two transfers – not the banks' conduct in *executing* the transfers. The issue here is whether a bank, clearly on notice that its customer is a victim of a fraud scheme and is mentally incapacitated, has a duty to protect its customer from further harm. The fact that the particular fraud scheme that victimized Larry involved wire transfers does not force this issue into the narrow confines of Article 4A.

      The Official Comment to Section 8.4A-102 states in part:

> The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

But the issue here is not whether NFCU or Wells Fargo properly *executed* the wire transfers in accordance with Article 4A and standard banking practices. It was what duty they owed to Larry before issuing the transfers. A Virginia circuit court has held, in interpreting the comment, that

> The Official Comment of Virginia Code Section 8.4A-102 ... sets forth that principles of law or equity may not be relied upon in order to create rights, duties, and liabilities which contradict those stated in Article 4A. The Comment, however, does not state the drafters intended to completely prohibit a party's reliance on law and equity claims. They merely meant to narrow and restrict their application.

*AG4 Holding, LLC v. Regency Title & Escrow Servs.*, 98 Va. Cir. 89, 98 (Fairfax Cir. 2018).

    1.   *Article 4A does not displace common-law tort.*

The Third Circuit held in *N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345-46 (3d Cir. 1982): "As a general rule, ... the UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code." It is difficult to envision how common-law negligence here could "thwart" the terms of Article 4A. And other statutes involved here – for instance, Va. Code § 63.2-1606(L) – impose duties outside of Article 4A.

Article 4A does not displace common-law causes of action in every case involving a wire transfer. The banks' actions in allowing the wire transfers to

occur, before the transfers were executed, are still subject to common-law claims. A Georgia Superior Court in Gwinnett County found that employees' actions after a specific time would be "post-wire negligence, which is not barred by UCC-4A." *Kotte v. Truist Fin. Corp.*, 2022 Ga. Super. LEXIS 3423 at *13 (March 30, 2022).

In fact, "the UCC does not displace all common law actions based on all activities surrounding funds transfers" *Pedersen v. MidFirst Bank*, 527 F. Supp. 3d 188, 193 (N.D.N.Y. 2021) (citing *Venture Gen. Agency, L.L.C.*, 2019 U.S. Dist. LEXIS 129032, 2019 WL 3503109, at *4 (N.D. Cal. Aug. 1, 2019)). "While Article 4-A should be the first place parties look for guidance when they seek to resolve claims arising out of a funds transfer, 'the article has not completely eclipsed the applicability of common law in the area." *Schlegel v. Bank of Am., N.A.*, 271 Va. 542, 552, 628 S.E.2d 362 (2006). NFCU and Wells Fargo cannot hide behind the U.C.C. for acts related to, but not part of, a wire transfer. The behavior in this case extends far beyond anything contemplated by Article 8.4A:

• Larry called NFCU warning, "We're moving money around due to an infraudulent [sic] charge on another system, and I need to validate what the current balance is", with NFCU not picking up on language variation or "we're" (JA 217 ¶ 46);

• NFCU warned its customers against the fraud Larry fell victim to (JA 217 ¶ 43; JA 326-327);

11

- Wells Fargo refused Larry's wires but continued to process as the intermediary bank (JA 212 ¶ 8; JA 218 ¶¶ 54-56; JA 219 ¶ 57; JA 328-486);

- NFCU reported Larry's wires to Adult Protective Services for investigation (JA 219 ¶ 58; JA 494-507);

- NFCU participated in the investigation;

- NFCU received correspondence from Adult Protective Services that Larry was an adult in need of services.

These are all factors and circumstances outside of Article 4A. As the Northern District of Texas District Court held, if the record shows that a party knew or should have known of additional facts when it took the complained-of action, then courts are more likely to find that preemption does not apply. *Consorcio Indus. De Construccion Titanes, S.A. DE C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 U.S. Dist. LEXIS 200382, at *7 (N.D. Tex. July 12, 2012) (N.D. Tx. July 12, 2012).

2. *Banks owe a duty of care to their customers, and when they breach that duty, the remedies are not exclusively within Article 4A.*

Banks owe a duty of care to their customers. *See, e.g., Valente v. TD Bank, N.A.*, 92 Mass. App. Ct. 141, 82 N.E.3d 1082, 1087 (Mass. Ct. App. 2017). In *Doe v. Deutche Bank Aktiengesellsschaft*, No. 22-cv-10018 (JSR), 2023 U.S. Dist. LEXIS 75503, at *50-51 (S.D.N.Y. May 1, 2023), a district court ruled that banks owe duties of reasonable care: "JP Morgan and Deutsche Bank, like everyone else, owed both Jane Does the ordinary duty of reasonable care. This

12

duty can extend to actions undertaken by third parties. Restatement (Third) of Torts: Phys. & Emot. Harm § 19 ....” The court continued, “Banks are not exempt from this duty,” and that the plaintiffs “plausibly assert” that two major banks owed them a duty in connection with the crimes of Jeffrey Epstein. *Id*.

Like the banks in *Doe*, NFCU failed to act reasonably and objectively when faced with the rampant fraud from which Larry was suffering.  NFCU did nothing to stop 74 wires from Larry's accounts.  It warned its customers about this very type of fraud.  It reported the situation to APS and participated, willingly, in the investigation.  As in *Doe*, the fraud scheme here is not governed solely by U.C.C. Article 4A.  NFCU knew Larry was being scammed, and it owed duties to him before issuing the wire transfers.

3. *The Bank Secrecy Act imposes duties upon banks that are outside the requirements of Article 4A.*

NFCU and Wells Fargo, as with other banks, have obligations under the Bank Secrecy Act (31 U.S.C. § 5311 et seq.). The U.S. Department of the Treasury Financial Crimes Enforcement Network and Consumer Financial Protection Bureau have released various memoranda notifying financial institutions about elder financial exploitation. These include “best practices” in order “to assist financial institutions with their efforts to prevent elder

13

financial abuse and intervene effectively when it occurs." *Recommendations and Report for Financial Institutions on Preventing and Responding to Financial Exploitation*, March 2016, Consumer Financial Protection Bureau at 2 (JA 513-574). The BSA's reporting requirements include mandatory reporting if the financial institution knows, suspects, or has reason to suspect that a transaction has no lawful purpose or is inconsistent with that customer's usual banking activity, and the financial institution knows of no reasonable explanation for the transaction. JA 26-26. NFCU processed 74 wire transfers, most purporting to be "loan repayments".

A simple inquiry about the addresses of the so-called banking locations or recipients would have revealed that some of the locations were storefronts or back alleys and most likely fictitious. For example, the coversheet for the January 28, 2021 wire transfer shows that the address of the recipient was "165 alley behind the old Phraya Karai Temple Wat." JA 367.

Most of the wire transfers were to different people, for almost exactly the same amounts. Larry never produced loan documents to any bank; they never asked him. They thus faced an obvious implausibility: A man with a clean banking and credit background suddenly had 74 creditors, all within seven months. But no one at either bank thought to ask.

14

There was ample suspicious activity, and NFCU took an extra step: It reported the situation to Fairfax APS. Larry's health and mental condition certainly made him vulnerable. NFCU was within its rights (and would be consistent with industry standards) to decline transmitting the wires. But even upon receiving the APS letter on January 28, 2021, advising that Larry was in need of services, NFCU continued to drain his bank account.

In a recent opinion, this Court defined the conduct of "undoing" wire transfers as falling within Article 4A. *Blue Flame Med. LLC v. Chain Bridge Bank, N.A.*, Nos. 21-2218, 21-2219, 2023 U.S. App. LEXIS 6547, at *18-20 (4th Cir. Mar. 20, 2023), cert. denied 2023 U.S. LEXIS 3152 (U.S., Oct. 2, 2023) (granting indemnification relief under U.C.C. § 4A-211(f) as such relief was not preempted, but was available and automatic in light of the circumstances surrounding the cancellation of the wire). The banks claimed they acted under Va. Code § 63.2-1606, bringing their actions outside of the U.C.C. It is even more evident in NFCU's behavior in reporting Larry, participating in the investigation, and "monitoring" the accounts. The U.C.C. provides for no consideration of Title 63.2.

This ruling is consistent with a previous holding by this Court that "Subpart B does not address the duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer." *Eisenberg v.*

*Wachovia Bank, N.A.*, 301 F.3d 220, 224 (4th Cir. 2002). The *Eisenberg* Court

concluded on the same page of the opinion,

> State law claims premised on conduct not covered by Subpart B
> cannot create a conflict with or duplicate the rules established in
> Subpart B. ... A finding that Wachovia is negligent in opening
> Reid's account would not conflict with a finding that, under
> Subpart B of Regulation J, Wachovia properly credited the
> Fedwire transfer to the account. The two findings would touch on
> distinct and independent conduct by Wachovia. We hold that
> Eisenberg's negligence claims, insofar as they challenge the
> opening and management of Reid's account, are not preempted by
> Regulation J.

Here, the banks permitted a demonstrably agitated, enfeebled, and

incapacitated individual – about whom NFCU was sufficiently concerned to

report to Adult Protective Services – to continue to process payments,

knowing he was being financially exploited. Given the ruling in *Blue Flame

Med. LLC*, this litigation should have survived the motions to dismiss.

## II.    THE DISTRICT COURT SHOULD HAVE GRANTED THE MOTION TO ALTER OR AMEND.

The district court's ruling here relied on facts alleged by the banks, and

weighed the veracity of evidence. This Court's precedent forbids this

approach: "Although the Supreme Court has subsequently made clear that the

factual allegations in a complaint must make entitlement to relief plausible

and not merely possible, see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-

63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), '[w]hat Rule 12(b)(6) does not

16

countenance are dismissals based on a judge's disbelief of a complaint's factual allegations," *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (internal quotation marks and citations omitted). If a claim lacks merit, Rule 56 is the proper vehicle to address it. *Bala v. Va. Dep't of Conserv. & Rec., 53*2 F. App'x 332, 334 (4th Cir. 2013) (quoting Swie*rkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

Further, the Administrator included germane and important evidence that arose after the hearing on the motions to dismiss. JA 710-712. Sean Gray was a social worker with Fairfax APS, and was assigned the Larry W. Cook matter. JA 710 ¶¶3, 4 & 8. Mr. Gray stated that he tried to explain to Larry that he was the victim of financial exploitation. JA 711 ¶11. Larry did not believe Mr. Gray, and told him so. JA 711 ¶ 12. But Larry did not seem to know reality; he was unable to explain what the transfers were for and was not able to identify who he was wiring money to. JA 711 ¶ 13.

Mr. Gray perceived that Larry was incapable of understanding what was happening. JA 711 ¶ 14. He then spoke with NFCU, saying that Larry had a mental-capacity issue; he believed Larry to be incapacitated. JA 711 ¶¶16, 17. But despite its knowledge that Larry was incapacitated and the victim of financial exploitation, NFCU refused to act to protect Larry. JA 711 ¶ 19.

Rule 59 Motions require the movant to show that:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Quillin v. C.B. Fleet Holding Co.*, 328 F. App'x 195, 203 (4th Cir. 2009).

The Administrator issued subpoenas in the state court to obtain some of the information she relied upon in submitting her complaint, described below in Part IV. JA 220 ¶ 63; JA 222 ¶ 78; JA 508-510. But that court and the district court refused to order production.

Mr. Gray's affidavit states that he came forward in response to media coverage of this litigation, so the evidence was newly discovered. His testimony is not cumulative, is material beyond question, and is highly likely to produce a new outcome. The district court accordingly erred in refusing to grant the Rule 59 motion and allow the case to go to trial.

## III.    VIRGINIA LAW DOES NOT REQUIRE A JUDICIAL INCAPACITY FINDING BEFORE A BANK IS ON NOTICE OF FINANCIAL EXPLOITATION.

The district court ruled that Larry had not been adjudicated to be incapacitated, so he legally had capacity. While Va. Code § 64.2-2000 defines an incapacitated person as one who has been "found by a court" to be so, The statutes that apply here contain their own definitions that do not require a

18

judicial finding of incapacity. And here, NFCU acted under Va. Code § 63.2-

1606, which does *not* require a legal finding of incapacity.

A. NFCU acted under § 63.2-1606.

Va. Code § 8.4A-211 is the only section in Article 4A using the term

"legal incapacity":

> (g) A payment order is not revoked by the death or legal
> incapacity of the sender unless the receiving bank knows of the
> death or of an adjudication of incapacity by a court of competent
> jurisdiction and has reasonable opportunity to act before
> acceptance of the order.

This statute does not define "legal incapacity." It only permits a payment order

to be revoked if the bank knows of the adjudication of incapacity and has

reasonable opportunity to act before acceptance of the order. That section

does not apply here.

The *right* statute, Va. Code § 63.2-1603, defines "financial exploitation":

> means the illegal, unauthorized, improper, or fraudulent use of
> the funds, property, benefits, resources, or other assets of an adult
> for another's profit, benefit, or advantage, including a caregiver or
> person serving in a fiduciary capacity, or that deprives the adult of
> his rightful use of or access to such funds, property, benefits,
> resources, or other assets. "Financial exploitation" includes (i) an
> intentional breach of a fiduciary obligation to an adult to his
> detriment or an intentional failure to use the financial resources
> of an adult in a manner that results in neglect of such adult; (ii)
> the acquisition, possession, or control of an adult's financial
> resources or property through the use of undue influence,
> coercion, or duress; and (iii) forcing or coercing an adult to pay
> for goods or services against his will for another's profit, benefit,

or advantage if the adult did not agree, or was tricked, misled, or defrauded into agreeing, to pay for such goods or services.

The same statute defines "incapacitated person" as "… any adult who is impaired by reason of mental illness, intellectual disability, physical illness or disability, advanced age or other causes to the extent that the adult lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." Neither provision requires a court adjudication of incapacity before their protections apply.

Both of these statutes, while not explicitly quoted in the Amended Complaint, were used in describing Larry's ailments, his susceptibility to the scam, and his overall mental condition. JA 215 ¶¶ 28–32. Paragraph 32 describes his impaired capacity "to make reasoned and rational judgments or decisions regarding his personal health and management of his finances."

While adjudication is necessary for the appointment of a guardian or conservator under Code § 64.2-2000, et seq., it is not required when determining whether a person is incapacitated for purposes of exploitation. The banks here had the ability to report Larry to Adult Protective Services (as NFCU eventually did) and to refuse to execute the transactions. Va. Code § 63.2-1606(L) specifically empowers them to do this and even immunizes them from civil or criminal liability for thus protecting their depositor:

20

Absent gross negligence or willful misconduct, the financial institution and its staff shall be immune from civil or criminal liability for (a) providing information or records to the local department of social services or to a court-appointed guardian ad litem or (b) refusing to execute a transaction, delaying a transaction, or refusing to disburse funds pursuant to this subsection. The authority of a financial institution staff to refuse to execute a transaction, to delay a transaction, or to refuse to disburse funds pursuant to this subsection shall not be contingent upon whether financial institution staff has reported suspected financial exploitation of the adult pursuant to subsection C.

By refusing to process the wires, NFCU would have incurred no liability since it made the report under §63.2-1606(C). The banks cited this statute in their motions to dismiss. But this puts them in an impossible position: They reported to APS upon "a good faith belief that the transaction or disbursement may involve, facilitate, result in, or contribute to the financial exploitation of an adult," but then urged below that Larry was perfectly capable. Explaining away this contradiction is a matter for trial, not for a motion to dismiss.

A jury could well conclude that the number, frequency, and amounts involved represented a drastic change in Larry's behavior and showed that he needed assistance. He was physically and cognitively impaired the entire time and had fallen prey to a financial exploitation scheme. This was an issue of fact for trial – not something to be decided on a motion to dismiss.

21

B. The pleadings state triable claims for undue influence and financial exploitation.

Undue influence, a species of fraud, "occurs when 'manifest irresistible coercion ... controls and directs the ... actions' of a person executing a deed or will and deprives him 'of his volition to dispose of his property as he wished.'" *Nuckols v. Nuckols*, 228 Va. 25, 38, 320 S.E.2d 734, 741 (1984) (quoting *Gill v. Gill*, 219 Va. 1101, 1106, 254 S.E.2d 122, 124 (1979). "Resistible persuasion, solicitation, advice, suggestions, and importunity do not constitute sufficient evidence of undue influence." *Pace v. Richmond*, 231 Va. 216, 224, 343 S.E.2d 59, 64 (1986) (internal citations omitted).

The Amended Complaint thoroughly outlined Larry's mental incapacities. His demeanor and shouting, as argued and alleged by NFCU, could indicate to a jury not that he was in control of his behavior, but that he was acting under duress – a hallmark that he lacked free will. A jury could agree; the facts must be taken in the light most favorable to the Plaintiff.

Moreover, Sean Gray, a former APS employee, came forward post-hearing on the motion to dismiss, stating that he believed Larry to be incapacitated, and told NFCU as much. JA 711 ¶¶ 16-17. At a minimum, these facts show notice on NFCU's part. Code § 63.2-1606 does not require actual knowledge. These are facts for trial, not ones meriting summary dismissal.

22

**IV.  THE DISTRICT COURT SHOULD HAVE (1) ORDERED PRODUCTION OF THE INTERMEDIARY AGREEMENT BETWEEN NFCU AND WELLS FARGO, AND THE CUSTOMER SERVICE AGREEMENTS, AND (2) ALLOWED THE ADMINISTRATOR TO AMEND HER COMPLAINT TO INCLUDE THEM.**

NFCU could not process international wires, and relied upon Wells Fargo as the intermediary bank in doing so. JA 212 ¶ 7. In the Amended Complaint, the Administrator explained that she was not provided with the Intermediary Agreement between the banks. JA 222 ¶ 78. Wells Fargo processed one wire for Larry before refusing to process any more. JA 212 ¶ 8; JA 218 ¶¶ 54-56. The Agreement would have exposed what information, if any, NFCU provided, and what duty Wells Fargo had to inform NFCU of their "common customer." The Court will note that both banks had a Larry W. Cook, located in Herndon, Virginia, as a customer. This was specifically addressed in the motion-to-dismiss hearing. JA 614-615.

More damning, the Consumer Financial Protection Bureau expressly warned financial institutions about elder financial exploitation and provided concrete recommendations. JA 513-574. The banks' duties, obligations, and interactions with each other matter here.

Despite this, the banks continually concealed their highly relevant customer service agreements, and the district court allowed this veil of secrecy to remain in place. Given the banks' refusal to provide documents in

response to a subpoena in the state probate case, the banks had the discretion to act contrary to Larry's demands if they did not believe the transaction to be in his best interests. Because Va. Code § 8.4A-212 shields them from liability for failure to prevent the wire transfers, neither bank should be able to hide from liability based on their "contracts" with Larry, as a result of their failure to produce such a contract in response to lawful subpoenas.

Under Fed.R.Civ.P. 15(a)(2), leave to amend a pleading "shall be freely given when justice so requires." Denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). The Administrator sought leave to amend with the production of the Intermediary Bank Agreement (subject to Protective Order in state court), with Sean Gray's affidavit, and with the customer service agreements between Larry and the banks. The District Court erred in failing to order the banks to produce the documents and refusing to allow her to amend.

## CONCLUSION

The Court should reverse the judgment below and remand the case for further proceedings, including a trial on the merits.

24

JANINE SATTERFIELD, Individually and in Her capacity as Administrator for the Estate of LARRY W. COOK

By:     /s/ L. Steven Emmert
              Of Counsel

Kimberley Ann Murphy, Esq. (VBN 45691)
Lisa M. Campo, Esq. (VBN 85898)
Justin B. Berger, Esq. (VBN 87314)
Hale Ball Murphy, PLC
10511 Judicial Drive
Fairfax, Virginia 22030
Telephone (703) 591-4900
Facsimile (703)591-5082
kmurphy@haleball.com
lcampo@haleball.com
jberger@haleball.com


L. Steven Emmert, Esq. (VSB No. 22334)
Sykes, Bourdon, Ahern & Levy, P.C.
4429 Bonney Road, Suite 500
Virginia Beach, Virginia 23462
Telephone (757) 965-5021
Facsimile (757) 456-5445
lsemmert@sykesbourdon.com

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [5,607] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.     This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Cambria*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>January 16, 2024</u>          <u>/s/ L. Steven Emmert</u>
                                                  *Counsel for Appellant*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 16th day of January, 2024, I caused this Brief

of Appellant and Joint Appendix to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

Mary C. Zinsner
Troutman Pepper
 Hamilton Sanders LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
(202) 274-1932

David M. Gettings
Troutman Pepper
 Hamilton Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
(757) 687-7747

Elizabeth Holt Andrews
Troutman Pepper
 Hamilton Sanders LLP
3 Embarcadero Center, Suite 800
San Francisco, California 94111
(415) 477-5762
*Counsel for Appellee Navy
Federal Credit Union*

Kathryn M. Barber
McGuirewoods LLP
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1227

Heather B. Chaney
McGuirewoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, Virginia 22102
(703) 712-5015
*Counsel for Appellee
Wells Fargo Bank, N.A.*

/s/ L. Steven Emmert
*Counsel for Appellant*